# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

July 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

SHARON ANN SMITH,                    )
                                     )
    Plaintiff/Appellee,          )
                                     )
                                     )    Appeal No.
                                     )    01-A-01-9809-CH-00515
VS.                                  )
                                     )    Williamson Chancery
                                     )    No. 22128
ALAN WAYNE SMITH,                    )
                                     )
    Defendant/Appellant.         )

APPEALED FROM THE CHANCERY COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE

THE HONORABLE HENRY DENMARK BELL, JUDGE

R. E. Lee Davies
HARTZOG, SILVA & DAVIES
123 Fifth Avenue North
P. O. Box 664
Franklin, Tennessee 37065-0664
    Attorney for Plaintiff/Appellee

GREGORY D. SMITH
FARRIS, WARFIELD & KANADAY, PLC
424 Church Street, Suite 1900
Nashville, Tennessee 37219
    Attorney for Defendant/Appellant

AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

# O P I N I O N

When the parties divorced, the trial court calculated the husband's net income for child support purposes by averaging his salary over a three year period. The wife appealed, arguing that the child support guidelines required that a capital gain of over $200,000 realized by the husband during the same period also be included in the calculation. We agreed, but suggested the trial court could prorate the capital gain over the longer time-frame during which the capital gain income was apparently earned. Upon remand, the trial court took evidence as to the length of that period, and made a fresh calculation, which the husband objects to in this appeal. We affirm the trial court.

## I. Prior Proceedings

Sharon Smith and Alan Smith divorced in 1994. The trial court divided the marital property and gave the wife custody of the two children of the marriage. Mr. Smith was ordered to pay child support and alimony. Two years later, Ms. Smith petitioned the trial court for an increase in child support, claiming that her former husband's net income had greatly increased.

The trial court heard proof that the husband earned an annual salary that averaged $113,000 as a Vice President of Comdata Corporation during the years 1994-1996. He also earned substantial bonuses and commissions during those years. In 1995, Mr. Smith exercised stock options he had acquired incident to his employment, resulting in a capital gain of $221,180[1]. The court calculated a fixed amount of monthly child support ($2,086) based upon Mr. Smith's salary income and

---

[1]Mr. Smith calculated the gross amount he realized upon the exercise of his stock options to be $217,142. However, for the purposes of this appeal, he has accepted the figure of $221,180, which was calculated by Ms. Smith and used by the trial court.

ordered that he also pay as child support 32% of any future bonuses or commissions he received. The court did not take the 1995 capital gain into account in any way. The wife appealed.

Following oral argument, we filed an opinion in this case (*Smith v. Smith*, Appeal No. 01-A-01-9705-CH-00216, filed Nashville, October 29, 1997). We found that the trial court had exceeded its authority in ordering an automatic adjustment in child support based upon the husband's future bonuses and commissions, because the child support guidelines promulgated by the Legislature require the courts to fix some <u>definite</u> amount for the obligor to pay, based upon his earning capacity. Tenn. Code Ann. § 36-5-101(a)(2)(A). We also noted that the definition of gross income found in the Rules and Regulations of the State of Tennessee defined gross income broadly as "all income from any source" and that it specifically included capital gains.

We accordingly remanded this case to the trial court for a fresh calculation of net income upon which to base Mr. Smith's child support obligation, with the following instructions:

> We therefore hold that in calculating a definite monthly amount of child support, the trial court must consider Mr. Smith's 1995 capital gains as well as his commissions, bonuses and salary. Since Mr. Smith apparently accumulated his stock options during the entire period of his employment at Comdata, and not just during the year in which he exercised them, it might be equitable to average his capital gains over that entire period, or to prorate them in some way, rather than just averaging them over the three year period that was used for calculating his average salary, commission and bonus. The trial court may take proof on the process by which the options were acquired, in order to make this determination.

## II. Current Proceedings

Following the remand, Ms. Smith filed a motion to set child support. The chancellor conducted a hearing in his chambers on May 19, 1998. No court reporter was present, so there is no transcript of that hearing. The court heard arguments of counsel and reviewed unsworn documents presented by the parties.

Ms. Smith presented a letter by Sara Groehler, Stock Option Administrator at Ceridian Corporation (Ceridian bought Comdata in 1995), accompanied by an employee stock option summary in the form of a table, which listed the grant date for Mr. Smith's stock options as August 3, 1993. Mr. Smith presented an offer of employment, in the form of a letter to him dated April 17, 1983 from Louis Molettiere, a Senior Vice President of Comdata. The letter outlined the salary and benefits that were to accompany the offered job, including a grant of "25,000 shares of the Company's common stock under the 1987 Non-Statutory Stock Option Plan."

Following the hearing, the trial court issued an order pro-rating Mr. Smith's stock options from August 1993. The chancellor's order referenced the documents described above, but did not state the reasons for apparently preferring the evidence presented by Ms. Smith over that of Mr. Smith. The recalculation of Mr. Smith's annual income from 1994-1996 resulted in a finding that his average gross annual income was $206,881, or $17,240 a month. Based upon this amount (or more precisely, based upon the net income derived from this amount), Mr. Smith's child support obligation came to $3,860 per month. The arrearage from the date of the court's earlier order came to $28,069 after consideration of the amount of child support actually paid since that time.

Mr. Smith's attorney subsequently filed a motion under Rule 59, Tenn. R. Civ. P., to Alter or Amend the Judgment, or for New Trial. Attached as an exhibit to the motion was a ledger containing a listing of stock options that were granted

between January 1, 1987 and January 27, 1995. The ledger indicated that Mr. Smith had been granted options for 25,000 shares of Comdata Corporation on October 1, 1991. At the hearing on the motion, Mr. Smith also produced the sworn affidavit of Michael W. Sheridan, acting Secretary of Comdata, testifying to the regularity and correctness of both the above-mentioned ledger, and of another document, the minutes of a regular meeting of the Board of Directors of Comdata Corporation held on October 1, 1991, which included a resolution approving the aforementioned grant to Mr. Smith.

In her response to the Rule 59 motion, Ms. Smith argued that Mr. Smith was not entitled to have his new evidence considered by the court because he failed to file an affidavit to meet his burden of proving that the evidence he wished to present could not have been discovered prior to the original proceeding through the exercise of due diligence. *See Seay v. City of Knoxville*, 654 S.W.2d 397, 399 (Tenn. App. 1983).

At the end of the hearing, the chancellor took the matter under advisement. On August 26, 1998, he filed an order denying the Rule 59 motion. This appeal followed.

### III. A Necessarily Limited Review

We must note at the outset the irregular nature of the hearing of May 19, 1998. A proceeding in chambers may be useful for some limited purposes, but when the rights of the parties are to be conclusively determined, it is not an adequate substitute for a hearing in open court, in accordance with the Rules of Civil Procedure and the Rules of Evidence.

The absence of a transcript of the evidence is particularly damaging to an appellant's prospects, for without such a transcript (or in the alternative, a statement of the evidence filed in accordance with Rule 24(c), Tenn. R. App. Proc.), the presumption of correctness that normally accompanies findings of fact by the trial court becomes conclusive. See Rule 13(d), Tenn. R. App. Proc.; *Word v. Word*, 937 S.W.2d 931 (Tenn. App. 1996); *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. App. 1992).

It appears to us that both parties submitted without objection to the procedures whose results are now at issue. Neither party alleges that he or she objected to the admission of documents submitted by the other that could have been excluded as inadmissible hearsay by a timely objection. If we are mistaken and objections were indeed taken, the failure of the parties to preserve those objections by arranging for the presence of a court reporter prevents us from reviewing the court's actions in any meaningful way.

Relief is not generally available in the appellate courts to a party who fails to take whatever action is necessary to prevent or nullify the harmful effect of an error. See Rule 36(a), Tenn. R. App. P. Thus, we cannot consider the appellant's argument that the trial court erred in accepting the unsworn, unexplained letter from Ms. Groehler and its attachments, and in using those documents to determine the date of the grant of the stock options in question.

As for the hearing on the Motion to Alter or Amend or for New Trial, we believe the appellee is correct in stating that when the basis of such a motion is the existence of newly discovered evidence, the appellant has a duty to furnish the court with an adequate explanation as to why such evidence could not have been produced at the trial of the case. The reason is that without such a rule, our courts would have

a much more difficult time closing the books on many cases, and achieving that finality of judgment which is one of the primary goals of our judicial system.

Since the appellant did not even attempt to offer such an explanation, the trial court did not err in refusing to reverse its earlier ruling, despite the appellant's contention that he was in possession of evidence that was better than the evidence he produced at trial.

## IV. The Educational Trust Fund

The Tennessee Child Support Guidelines permits the court to order a non-custodial parent to pay that portion of child support which is based upon net income in excess of $6,250 per month into an educational trust fund for the benefit of the children, rather than going directly to the custodial parent. Tenn. Rules & Regs 1240-2-4-.04(3). The appellant argues that the trial court erred in refusing to order the creation of such a fund. However the creation of an educational trust fund is not mandatory, but is within the sound discretion of the trial court. *Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn. 1993).

Since there is no evidence in the record that the appellant asked the court to create an educational trust fund, we cannot find that the court abused its discretion in failing to do so. But because of the modifiable nature of child support orders, we see nothing to prevent the appellant from moving the court for the creation of such a fund, if he believes it would be to his advantage, or that of the children.

Ms. Smith has also asked to be awarded her attorney fees on appeal. We note, as we did in our earlier opinion in this case, *supra*, that a substantial portion of the attorney fees she incurred were for the purpose of vindicating her right to

receive an appropriate amount of support for her children.  We therefore direct the trial court to order the appellant to pay one-half of her attorney fees on this appeal.

**V.**

The order of the trial court is affirmed.  Remand this cause to the Chancery Court of Williamson County for further proceedings consistent with this opinion.  Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
WILLIAM B. CAIN, JUDGE

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

SHARON ANN SMITH,      )
                                    )

    Plaintiff/Appellee,    )       Appeal No.
                                    )       01-A-01-9809-CH-00515
                                    )

VS.                        )       Williamson Chancery
                                    )       No. 22128
                                    )

ALAN WAYNE SMITH,      )       Affirmed and
                                    )       Remanded

    Defendant/Appellant.    )

## J U D G M E N T

This cause came on to be heard upon the record on appeal from the Chancery Court of Williamson County, briefs and argument of counsel; upon consideration whereof, this Court is of the opinion that in the decree of the Chancellor there is no reversible error.

In accordance with the opinion of the Court filed herein, it is, therefore, ordered and decreed by this Court that the decree is affirmed. The cause is remanded to the Chancery Court of Williamson County for the enforcement of the decree and for the collection of the costs accrued below.

Costs of this appeal are taxed against Alan W. Smith, Principal, and Gregory D. Smith, Surety, for which execution may issue if necessary.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

_____
WILLIAM C. KOCH, JR., JUDGE

_____
WILLIAM B. CAIN, JUDGE